630    APPELLATE COURTS OF ILLINOIS.

VOL. 99.] Supreme Lodge, Order of Mutual Protection, v. Zerulla.

## Supreme Lodge, Order of Mutual Protection, v. Wilhelmine Zerulla.

1. LIFE INSURANCE—*When Suicide Avoids the Contract.*—Where a policy of life insurance contains a provision that if the insured commit suicide, "sane or insane," it is not necessary, in order to avoid the liability, to show that in taking his own life he was conscious of the moral quality or consequences of the act, but only that he was conscious, at the time, of the physical nature and consequences of such act, or that he knew that the means employed would cause his death.

2. BENEFICIARY ASSOCIATIONS—*Effect of By-Laws Requiring Claims to be First Submitted to the Executive Committee of the Association.*— A by-law of a beneficiary association requiring a death claim to be submitted to the executive committee before bringing suit in a court of law is not binding upon the beneficiary.

3. WAIVER—*Of a By-Law by a Beneficiary Association.*—A provision in a by-law of a beneficiary association requiring a death claim to be submitted to the executive committee of the association and declaring a forfeiture of the beneficiary's rights for a failure to do so, is waived by the action of the association in disapproving the claim and refusing to pay it.

4. SAME—*Of the By-Laws of Insurance Associations.*—By-laws of an insurance association requiring a beneficiary, before bringing suit, to pursue a peculiar remedy provided in such by-laws, may be waived by the absolute refusal of the association to pay the claim.

Supreme Lodge, Order of Mutual Protection, v. Zerulla.

Assumpsit, on a contract of life insurance.    Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in this court at the March term, 1901.    Reversed and remanded. Opinion filed January 30, 1902.

Statement by the Court.—Appellee, the beneficiary under a certificate of insurance issued by the appellant January 15, 1897, for $1,000, the insured, Wilhelm Jordan, having died March 6, 1897, began suit to recover the amount of the certificate, a trial of which before the court without a jury, resulted in a finding in her favor of $1,175 and judgment thereon, from which this appeal is taken.

The declaration consists of the common counts and a special additional count, declaring specially upon the certificate, to which were interposed the general issue, and ten additional special pleas.    Replications were filed, taking issue upon the first six pleas.    To the 7th, 8th, 9th and 10th additional pleas numerous replications were filed, on some of which issue was taken, and as to others demurrers were sustained, and a demurrer to a replication to the 10th plea was carried back and sustained to that plea.    It is unnecessary to set out all these pleadings, as the substance of the defense made by the appellant is that the insured came to his death from his own act, knowing that such act would result in his death, or, in other words, that he knew at the time that the physical effect of such act would cause his death.

At the close of all the evidence the court refused to find for the defendant, and among other propositions of law held the following:

" 2.    The court finds as law that every man is presumed to be sane until proven to be insane, and in this case the law presumes that Wilhelm Jordan was sane, and the burden of proof is on the plaintiff to show that he was insane, and the plaintiff must prove by preponderance of the evidence that Jordan was insane and that he did not intentionally take his own life.

" 3.    The court holds as law that though it appears from the evidence that Wilhelm Jordan at the time of his death was insane, and that his death was the result of such insanity, if it further appears from the evidence that irre-

632    APPELLATE COURTS OF ILLINOIS.

VOL. 99.] Supreme Lodge, Order of Mutual Protection, v. Zerulla.

spective of such insanity Wilhelm Jordan at the time of his death was capable of forming an intention, and that he did intentionally commit suicide, then the plaintiff in this case can not recover and the finding should be for the defendant.

" 4.   The court holds as law that the law presumes that Wilhelm Jordan was sane, and though it appears, or is proven by the evidence, that he committed suicide, from that fact alone no presumption arises that he was insane at the time he took his own life.

" 5.   If it is proven by the evidence in this case that Wilhelm Jordan intentionally took his own life, the finding should be for the defendant."

" 8.   The court holds as law that the charter, constitution, laws, rules and regulations of the defendant order, the Supreme Lodge, Order of Mutual Protection, in force at the time of the death of Wilhelm Jordan, if any be shown by the evidence, are to be taken into consideration in determining whether or not the plaintiff is entitled to recover in this case, and the right of the plaintiff to recover must be determined by the said charter, constitution, laws, rules and regulations of the said defendant order in force at the time of the death of said Wilhelm Jordan, in connection with all other facts shown by the evidence."

The certificate in question contains the following provisions:

" This certificate, issued by the Supreme Lodge, Order of Mutual Protection, witnesseth :   That Wilhelm Jordan, of Chicago, Illinois, has been accepted as a member of the Supreme Lodge, Order of Mutual Protection, upon the faith of the warranties and statements made in his application to the order and medical examination, and that the Supreme Lodge will, upon his death, provided he has, while a member, complied with the charter, constitution, by-laws, rules and regulations of the order, pay from the Widows and Orphans' Protection Fund, one-half of the amount of one assessment, not to exceed, however, the sum of $1,000, to his sister, Wilhelmine Zerulla, unless this certificate should be by him revoked.

The express condition upon which this certificate is issued is that the rights of the above named beneficiary or beneficiaries shall be determined by the charter, constitution, by-laws, rules and regulations of the order in force at the time that the sum due hereunder is payable; paragraph 4 of section 148 being annulled."

The application of Mr. Jordan to become a member contains the following:

"I further agree that should my disability or death be caused or result directly or indirectly from any immoral or unlawful act or pursuit on my part, or by my own suicidal act, sane or insane, * * * then in such case or cases neither myself nor any of my beneficiaries shall be entitled to participate in the Widows and Orphans' Protection Fund, or to have any claim of whatsoever kind or nature against any department of the Order of Mutual Protection, or any subordinate lodge thereof."

The by-laws of appellant in force at the time of Mr. Jordan's death, provide (Sec. 165) that no benefit shall be paid on account of the death of a member "if the death was due to the voluntary or involuntary suicidal act of the deceased member, whether he was at the time sane or insane."

CRATTY, JARVIS & CLEVELAND, attorneys for appellant.

P. L. O'MEARA and WILLIAM SCHREIDER, attorneys for appellee.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

The first claim made is that the court should have found the issues for the defendant. We can not so hold as a matter of law.

The evidence on behalf of appellee tends to show a state of facts which would justify a recovery, but there is a conflict in the evidence as to the extent of the insanity of Mr. Jordan when he committed suicide, as we think the clear preponderance of the evidence shows he did. That he was insane for some weeks prior to his suicide, the evidence tends strongly to establish, as well as to show that he was bereft of all reason and incapable of forming an intention to take his own life or of understanding the physical effect of any act which was likely to result in his death. At the same time there is evidence which strongly tends to show that this act was done deliberately and that he knew at the time that the things which he did would cause his death. Coun-

sel for appellant thus states the substance of that part of the evidence, which seems to be substantially correct, viz.:

"The evidence further shows that on Saturday, March 6, 1897, shortly before seven o'clock P. M., Wilhelm Jordan came to his death by hanging himself, by taking a piece of rope, wash line, and fastening one end of the rope on the joist or rafters running over his room. The other end was tied around him. His head was in a sling. The rope went through a loop and then around his neck, and was tied up to the roof. When found he was hanging by this rope, and his feet were four or five inches from the floor. Near by was a chair. This is in substance the statement of the witness who found him and cut him down. The witness gives it as his opinion that Jordan stepped on the chair. He also says 'there was no other way to get up there besides the chair.' "

This being the state of the evidence, we think there was presented a question of fact on which reasonable minds might well differ, and therefore it can not be said, as matter of law, that the finding should have been for the appellant.

In the case of Nelson v. Equitable Life Assurance Society, 73 Ill. App. 133–46, we reviewed the authorities upon the question here presented, and there said :

"It thus is clear that when the policy contains the sane or insane clause, it is not necessary, in order to avoid liability, to show that a person taking his own life was conscious of the moral quality or consequences of the act, but only that he was conscious, at the time, of the physical nature and consequences of the act, that is, that he knew that the means he employed would cause death or endanger his life. Some of the cases go further, and hold that under this clause it is immaterial whether the assured even knew the physical consequences of his act; but we think that should be shown, in order to avoid liability by the insurer."

The exact question has not been decided by the Supreme Court, so far as we know, but we think that our conclusion in the Nelson case is supported by the weight of authority. In fact, counsel do not disagree as to the law on this point. Counsel for appellee relies upon some of the cases quoted by this court to support the Nelson case.

The propositions of law quoted in the statement as having been held by the learned trial judge, show, in our opinion, that he committed no error in holding the same as the law of the case. A number of refused propositions, which it is claimed the court erred in refusing, are in substance covered by those held.

The cause, up to the time the evidence closed, was heard before the court and jury, when, in the course of a coloquy between court and counsel as to whether there was a question of fact to be submitted to the jury, viz., as to whether the deceased was sufficiently sane to understand the nature of the act of suicide, the court, in speaking to appellee's counsel, said:

"I thought the doctor set you right on that in stating there are no degrees of insanity; if a man is insane he is insane all through; you are still coming back to it now; you say he is insane and they don't dispute that; therefore there is no question of fact for the jury to pass on. To say that he was or was not insane, then, resolves itself purely into a question of law. He did take his life—nobody disputes that. There is no particular dispute on that question. Now, what have you got to say on the question of law?"

From this statement, as well as others in the record, we think it apparent that the court reached the conclusion he did solely upon the ground that if, as he found, it was established by the evidence that Mr. Jordan was insane at the time he took his life, it was immaterial whether he knew, at that time, the physical nature and consequences of the acts leading to his death. We therefore think that there should be another trial, from which we would have the benefit of a decision of the trial court on this question of fact.

A further contention is made, that there was error in sustaining a demurrer to the tenth plea, which presents the question as to whether the appellee, before bringing suit, should have submitted her claim to the approval of appellant's executive committee, and in case of its rejection, should have appealed to the Supreme Lodge of appellant, pursuant to the provisions of the by-laws of appellant then in force, which required this to be done, and in case of fail-

636     APPELLATE COURTS OF ILLINOIS.

VOL. 99.] Supreme Lodge, Order of Mutual Protection, v. Zerulla.

ure so to do, the beneficiary's rights would thereby be forfeited.

This question must, in our opinion, by reason of the facts shown on the hearing, be determined against the appellant. In the first place, such a provision in the by-laws as to a matter of the nature here presented, concerning, as it does, the liability of appellant under a death claim made on its certificate of insurance, is not binding upon the beneficiary; and secondly, even though the by-laws are binding in this regard, this provision has been waived by the action of appellant, through its supreme secretary, who, under date of June 18, 1897, by letter, notified appellee that the executive committee of appellant had not approved the claim on account of the death of Mr. Jordan; that the claim would not be paid because he had committed suicide less than three years after he became a member, this being in violation of appellant's by-laws. People v. Order of Foresters, 162 Ill. 78–83, and cases cited; Stephenson v. Ins. Co., 54 Me. 55–70; Avery v. Scott, 20 Eng. L. & Eq. R. 327; Grand Lodge, etc., v. Randolph, 84 Ill. App. 220–7, affirmed, 186 Ill. 89.

In People v. Order of Foresters, *supra*, in which the court considered the right of a member to file a petition for mandamus to compel a fraternal society to restore such member to the privileges of the society without first exhausting the remedies secured to her by its constitution and by-laws, it says:

"It is to be remembered, however, that there is a clear distinction between the obligation to appeal from the lower to the higher tribunals of the society itself, resting upon one who presents a question of discipline, and such obligation so far as it concerns one who asserts a claim to money due upon a contract. Where the controversy is concerning the discipline or policy or doctrine of the order or fraternity, the member must resort to the method of procedure prescribed by the association, including the remedy by appeal, before invoking the power of the courts. But it is otherwise where a member claims money due from the society on its contract, or where the beneficiary of a deceased member claims money due from the society on its contract of insurance; in such case, the right to resort to the courts to coerce payment will not be abridged by the right of appeal from

a lower to a higher tribunal of the society as conferred by its laws and rules. 'Courts of justice are freely open to those who seek money due them upon a contract.'"

In the Randolph case, *supra*, the by-law was permissive only; but in the Stephenson and Avery cases, the courts sustain the conclusion reached by the Supreme Court above noted. The case of Railway Conductors' Benefit Ass'n v. Robinson, 147 Ill. 148, relied upon by appellant, is not, in our opinion, applicable here; it rather tends to support the proposition that the by-laws in the respect claimed are not binding on the appellee.

The other cases relied on, being decisions of the Appellate Courts of this State and foreign jurisdictions, even if it can be said that they sustain appellant, must yield to the ruling of the Supreme Court above quoted.

But if the by-laws can be said to require the appellee, before bringing suit, to pursue the remedy thereby provided, the requirement is one which the appellant may waive, and in our opinion, by its refusal absolutely to pay the claim, it has waived. Metropolitan, etc., Ass'n v. Windover, 137 Ill. 417-32; Ry., etc., Ass'n, v. Tucker, 157 Ill. 194-201.

We think there was no error in sustaining the demurrer to the tenth plea. Other points made by counsel, in view of the conclusions reached, do not require special mention.

The judgment is reversed and the cause remanded.